UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA A. PEARSON, SUCCESSOR IN INTEREST TO TOM PEARSON, INDIVIDUALLY AND DBA A-LIST CONSULTANTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, et al.,<br><br>Defendants. | Case No. 24-cv-06594-JSC<br><br>**ORDER RE: MOTION TO REMAND**<br><br>Re: Dkt. No. 25 |

In September 2024, Safeco Insurance Company of America removed this case to this Court pursuant to 28 U.S.C. sections 1332(a) and 1441. (Dkt. No. 1.) Safeco asserts defendants Rainbow International Bay Area North ("Rainbow"), Water Mold Fire Restoration Inc. ("WMFRI"), John Sophinos, Save Services, and Sarah Jean McNelly were fraudulently joined so their presence does not defeat diversity. Now pending before the Court is the motion of Alisa A. Pearson—successor in interest to Tom Pearson—to remand this action to the Alameda County Superior Court. (Dkt. No. 25.) Having carefully considered the parties' submissions, and with the benefit of oral argument on June 5, 2025, the Court GRANTS Ms. Pearson's motion to remand. Safeco has not met the heavy burden of establishing fraudulent joinder.

**BACKGROUND**

Safeco sold Rita and Demetrious Koutsoftas an insurance policy for their property, located at 1303 and 1305 Walnut Street in Alameda, California ("the Property"). (*Id.* ¶¶ 3, 4, 26.)[1]

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Around August 23, 2020, when the insurance policy "was in full force and effect, The Property[] suffered heavy damage in a fire." (*Id.* ¶ 28.) "Rita Koutsoftas and/or Demetrious Koutsoftas sought coverage under The Policy." (*Id.*) "Subsequently, and in exchange for valuable consideration, Rita Koutsoftas and Demetrious Koutsoftas assigned all rights that they had or might have under The Policy, and against defendants, to Mr. Pearson." (*Id.* ¶ 26.) "Mr. Pearson also sought coverage under The Policy." (*Id.* ¶ 28.)

Because the parties disagreed about the actual cash value of the claim, Mr. Pearson moved to compel appraisal in the Alameda County Superior Court in January 2021.[2] (Dkt. No. 26 at 5.) An appraisal award was issued in July 2022. (*Id.* at 196-97.) In February 2023, the Alameda County Superior Court granted Mr. Pearson's unopposed petition to confirm the appraisal award. (*Id.* at 205.) The following month, the court issued judgment "declar[ing] that the values and amounts of loss determined by the appraisers . . . [were] confirmed, final, and binding." (*Id.* at 208.)

In September 2023, Mr. Pearson, individually and doing business as A-List Consultants, filed a separate lawsuit against Safeco in Alameda County Superior Court, alleging Safeco was liable for breach of contract and breach of the covenant of good faith and fair dealing for "failing to pay amounts due for the losses sustained" and for "making misrepresentations about coverage . . . even though [Safeco] knew . . . Plaintiff had the right to all benefits under The Policy." (Dkt. No. 1-2 ¶¶ 23, 28.) In April 2024, Mr. Pearson amended his complaint to add Rainbow, WMFRI, John Sophinos, Save Services, and Sarah Jean McNelly as defendants. (Dkt. No. 1-3 ¶¶ 6-11.) Rainbow, WMFRI, and Mr. Sophinos—who "owned and/or operated both Rainbow and WMFRI"—are collectively referred to as "Rainbow Defendants." And Save Services and Ms. McNelly are collectively referred to as "Save Defendants."

---

[2] Ms. Pearson requests the Court judicially notice documents "filed in the underlying petition to compel appraisal in the Superior Court of California, County of Alameda, case no. RG21087092." (Dkt. No. 26 at 1.) The Court GRANTS Ms. Person's request and judicially notices Exhibits 1 through 9 at Docket No. 26. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (taking judicial notice of "documents on file in federal or state courts").

2

1    As alleged in the amended complaint, the Rainbow and Save Defendants "prepared and
2 issued construction estimates . . . and accepted remuneration with respect to The Property and the
3 insurance claim" and in doing so, violated California Business & Professions Code section 17200
4 by unlawfully holding themselves out as licensed construction contractors.  (*Id.* ¶¶ 29-30.)
5 Specifically, the complaint alleges Rainbow violated California law "by utilizing the contractor's
6 license of defendant WMFRI . . . to conduct contracting work" and "by preparing and issuing and
7 entering into one and/or more home improvement contracts that were not signed by the parties
8 thereto."  (Dkt. No. 24 ¶ 48(a), (b).)  *See* Cal. Bus. and Prof. Code § 7075.1(a) ("[n]o license,
9 regardless of type or classification, shall be transferable to any other person or entity under any
10 circumstances"); *id.* § 7159(d) ("[a] home improvement contract and any changes to the contract
11 shall be in writing and signed by the parties to the contract prior to the commencement of work
12 covered by the contract").  And the complaint alleges both the Rainbow and Save Defendants
13 violated California law by acting in the capacity of contractors without the proper license and by
14 failing to obtain a joint venture license related to their work on the Property.  (Dkt. No. 24 ¶ 48(c),
15 (d).)  *See* Cal. Bus. and Prof. Code § 7028.5 (making it unlawful to "individually act in the
16 capacity of a contractor within this state without having a license in good standing to so engage or
17 act"); *id.* § 7029.1(1) (making it unlawful "for any two or more licensees, each of whom has been
18 issued a license to act separately in the capacity of a contractor within this state, to be awarded a
19 contract jointly or otherwise act as a contractor without first having secured a joint venture
20 license").

21    On September 19, 2024, Safeco removed the case pursuant to 28 U.S.C. sections 1332(a)
22 and 1441.  (Dkt. No. 1.)  The notice of removal states there is complete diversity between Mr.
23 Pearson, a citizen of California, and Safeco, "a corporation organized and existing under the laws
24 of the State of New Hampshire."  (*Id.* ¶¶ 10, 11.)  The notice does not dispute the alleged
25 California citizenship of the Rainbow and Save Defendants.  (Dkt. No. 24 ¶¶ 6-11.)  Instead, it
26 asserts "[t]he Rainbow Defendants and Save Defendants are fraudulently joined in this action, and
27 their presence does not defeat diversity."  (Dkt. No. 1 ¶ 14.)

28    On September 17, 2024—two days before Safeco removed the case—Mr. Pearson passed

away. (Dkt. No. 24 ¶ 1; Dkt. No. 17-1.) The parties stipulated to substitute Alisa A. Pearson, Mr. Pearson's widow and his "successor in interest with respect to all matters at issue in this lawsuit," as the plaintiff. (*Id.*; Dkt. No. 20.) Ms. Pearson filed a second amended complaint on April 4, 2025 for purposes of effectuating the substitution. (Dkt. No. 24.) Then, Ms. Pearson filed the pending motion to remand the case. (Dkt. No. 25.)

## MOTION TO REMAND

Ms. Pearson moves to remand on the ground "complete diversity between the parties does not exist" because the Rainbow and Save Defendants "are citizens of California, where Plaintiff is also a citizen." (Dkt. No. 25-1 at 4.) Ms. Pearson argues Safeco has not met its burden of demonstrating these defendants are "sham defendants" who have been fraudulently joined.

### A.     Legal Standard

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). The Ninth Circuit recognizes "two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (cleaned up). To establish fraudulent joinder the second way, the defendant must "show that the individuals joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

The fraudulent joinder analysis, like the analysis for a Rule 12(b)(6) motion to dismiss, "require[s] some assessment of the plaintiff's lawsuit." *Grancare*, 889 F.3d at 549. But the two analyses are not equivalent. *Id.* "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the wholly insubstantial and frivolous standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* (cleaned up). "[A] federal court must find that a defendant was properly joined and remand the case to state court if there is a '*possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants.'" *Id.* (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)).

Due to the "general presumption against finding fraudulent joinder," a defendant asserting fraudulent joinder "bears a heavy burden." *Id.* at 548 (cleaned up).

### B.     Analysis

Safeco contends Ms. Pearson "cannot state a viable Section 17200 claim against the Rainbow Defendants or the Save Defendants" as a matter of law because Ms. Pearson, as an assignee, lacks standing to pursue a section 17200 claim. (Dkt. No. 1 ¶¶ 18-20.)  To bring a UCL claim, California law "requir[es] the plaintiff to be one 'who has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 1002 (2009) (quoting Cal. Bus. & Prof. Code § 17204).  In *Amalgamated Transit*, over 150 employees and former employees of the defendants assigned to the plaintiff labor unions their rights under the unfair competition law. *Id.* at 998-99.  In considering "whether under the unfair competition law an assignment of a cause of action can confer standing on an *uninjured* assignee," the California Supreme Court answered "no":

> To allow a *noninjured assignee* of an unfair competition claim to stand in the shoes of the *original, injured claimant* would confer standing on the assignee in direct violation of the express statutory requirement in the unfair competition law, as amended by the voters' enactment of Proposition 64, that a private action under that law be brought *exclusively* by a "person who has suffered injury in fact and has lost money or property as a result of the unfair competition."

*Id.* at 1001-02 (quoting Cal. Bus. & Prof. Code § 17204).

*Amalgamated Transit* stands for the proposition that uninjured assignees lack standing to bring a UCL claim solely in their capacity as an assignee.  Indeed, the plaintiff labor unions conceded they did not "suffer[] injury resulting from an unlawful action." 46 Cal. 4th at 1001.  But contrary to Safeco's argument, *Amalgamated Transit* does not preclude individuals who are suing on behalf of assignors who suffered an injury from also bringing a UCL claims for their own injuries.  The cases Safeco cites confirm as much. *See, e.g.*, *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 955 (S.D. Cal. 2016) (limiting a party's "claims under the UCL . . . to damages it suffered directly, as opposed to indirectly as an assignee"); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 899 (C.D. Cal. 2012) ("In so far as the [plaintiffs] suffered their own independent and direct injuries 'as a result of' the unfair

competition, they may pursue their own UCL claims." ).

And here, a state court could find Ms. Pearson suffered an injury due to the Rainbow and Save Defendants' lack of compliance with California contractor licensing laws that is distinct from the injuries of the assignors, the Koutsoftases. As alleged in the complaint, the Rainbow and Save Defendants were retained to prepare and issue construction estimates and accepted payment for construction work done at the Property. (Dkt. No. 24 ¶¶ 29-30; Dkt. No. 26 at 35.) The Rainbow and Save Defendants were not properly licensed to do such work. (Dkt. No. 24 ¶¶ 29-30.) As a result, the Pearsons (as the Koutsoftases' assignees) were forced to expend *their own* resources to obtain insurance benefits due:

> [A]s a proximate and legal result of the unlawful, unfair, and fraudulent business practices of the Rainbow Defendants and the Save Defendants, Mr. Pearson, Plaintiff and Plaintiff's assignors were forced to expend additional resources and money and wait longer than they would have otherwise to obtain the insurance benefits that Insurance Defendants ultimately did pay.[3]

(*Id.* ¶ 52.) The expenditure of unnecessary resources is a recognized economic injury from unfair competition. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011) (as one of the "innumerable ways in which economic injury from unfair competition may be shown[,] [a] plaintiff may . . . be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary"). At this stage, the Court does not and need not find whether Rainbow and Save Defendants' lack of compliance with contractor licensing laws caused this alleged injury. Because the complaint alleges the Rainbow and Save Defendants' lack of compliance caused the Pearsons to pay money they otherwise would not have had to pay, there is a possibility Ms. Pearson can state a cause of action as to these defendants. As Safeco fails to meet its "heavy burden" of establishing fraudulent joinder, remand is appropriate.

---

[3] The motion states the complaint could be amended to state "[t]he date of assignment was on or about October 8, 2020." (Dkt. No. 25-1 at 2 n.1.) Ms. Pearson's request for judicial notice indicates Mr. Pearson initiated the appraisal proceedings in January 2021. (Dkt. No. 26 at 5.) While the complaint does not explicitly allege an injury occurring after the assignment, remand is appropriate when—as here—it could be cured by amendment. *See Grancare*, 889 F.3d at 550 (the court "must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend").

1        The district court cases Safeco cites do not persuade the Court otherwise.  Those cases
2   were representative actions and thus implicated the *Amalgamated Transit* court's holding that "all
3   unfair competition law actions seeking relief on behalf of others, including those brought by
4   representative or associational plaintiffs, must be brought as class actions."  46 Cal. 4th at 1005.
5   In *WellPoint*, healthcare providers received assignments from their patients to sue for violations of
6   the UCL.  903 F. Supp. 2d at 895.  The court dismissed the healthcare provider plaintiffs'
7   assignment-based UCL claims because allowing them "to sue on behalf of the injured subscriber-
8   assignors simply because they have suffered their own distinct injuries would run counter to
9   *Amalgamated Transit'*s pronouncement that all UCL actions seeking to recover for injuries
10  inflicted on others must be brought as class actions."  *Id.* at 899.  That pronouncement is
11  inapplicable here: the present action is not an effort to skirt the class action requirements.
12  Whereas the *WellPoint* health providers were suing in a representative capacity "to recover
13  derivatively for the injuries inflicted on their subscriber patients," *id.*, Ms. Pearson asserts injury
14  based on injuries the Pearsons suffered after the assignment, including the expense of initiating
15  and financing litigation and appraisal proceedings.  That is, Ms. Pearson does not merely seek to
16  stand in the shoes of the assignors to collect the insurance benefits due to them, but instead argues
17  she suffered an injury in addition to and separate from that of her assignors.
18       *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110,
19  1121, 1123 (C.D. Cal. 2015) is also distinguishable because it was a representative capacity
20  action.  The plaintiffs—13 ambulatory surgery centers that provide Lap–Band surgeries and
21  services and a physicians' medical group—sued health insurers, alleging the insurers engaged in a
22  deliberate effort to "avoid paying for Lap–Band surgeries and related services for patients who
23  were morbidly obese."  The plaintiffs asserted they had standing to bring UCL claims "as
24  assignees of their patients' benefits."  *Id.* at 1122 ("Every patient purportedly signed an
25  'Assignments of Rights and Benefits,' assigning the patients' health insurance benefits and an
26  array of related rights to their providers.").  They also alleged they suffered injury because the
27  insurers "routinely misrepresented that Plaintiffs' claims would be paid, when in fact Defendants
28  had no intention of paying any of Plaintiffs' claims."  *Id.* at 1185-86.  While acknowledging such

7

injuries "might constitute just the sort of independent injury required to assert a viable UCL claim," the court held the plaintiffs lack standing as to the UCL count because those injuries were "intertwined with other purported wrongs that implicate the assignors' injuries." *Id.* at 1186. To hold otherwise would allow the plaintiffs to evade the class action requirements: "Even if Plaintiffs allegedly suffered their own injuries, it is clear that they are seeking to recover derivatively on behalf of their assignors in a way that contravenes the holding of *Amalgamated Transit* that such derivative UCL actions must be brought as class actions." *Id.* at 1189. Here, there is no class action. Ms. Pearson is suing to recover lost money for injuries allegedly sustained after the assignment, not suing on behalf of a group of individuals for their past injuries.

Because Ms. Pearson's allegations she was injured by the Rainbow and Save Defendants are not "wholly insubstantial and frivolous," *see Grancare, LLC*, 889 F.3d at 548, neither is her UCL claim against those defendants. So, Safeco has not met the heavy burden of establishing the Rainbow and Save Defendants were fraudulently joined.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Ms. Pearson's motion to remand the case to the Alameda County Superior Court.

This Order disposes of Docket No. 25.

**IT IS SO ORDERED.**

Dated: June 5, 2025

JACQUELINE SCOTT CORLEY
United States District Judge